UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIO TETA, ET AL | : | |
| Plaintiffs | : | CIVIL ACTION NO. |
| v. | : | 3:02-cv-2183 (JCH) |
| | : | |
| LI QUIN FU, ET AL | : | |
| Defendants. | : | FEBRUARY 23, 2004 |

**RULING ON DEFENDANTS' MOTION TO DISMISS [DKT. NO. 13]**

Plaintiffs, Mario Teta, Jr., and Ronald Machado, bring this suit against Li Quin Fu, Shanghai Matsuoka Company, Ltd., Long Yi Wang, Amanda Z. Maw, Jerry Wang, Vicki Zhang, and Matsuoka America Ltd. ("defendants"). The plaintiffs allege that they entered into an agreement with the defendants, in which the plaintiffs would investigate for commission various business opportunities for defendant corporations Matsuoka America and Shanghai Matsuoka, particularly opportunities to purchase United States printing businesses, including several Sir Speedy franchises. According to the plaintiffs, after benefitting from plaintiffs' services, the defendants then circumvented them to deal directly with Sir Speedy's headquarters. Plaintiffs further allege that Shanghai Matsuoka purchased Sir Speedy franchise rights for all of China and Hong Kong without paying the plaintiffs their promised commission or any other compensation for their services. The defendants have moved to dismiss the complaint. Plaintiffs then requested leave to file an amended complaint, which the court has granted.

For the reasons that follow, the defendants' motion to dismiss is granted in part and

1

denied in part.

## I.    BACKGROUND[1]

According to the Amended Complaint, Shanghai Matsuoka is a Chinese limited liability company, with place of business in Shanghai City, China.  Defendant Fu is a resident of China and allegedly exercises control over Shanghai Matsuoka and its American relative, Matsuoka America Ltd., which is a limited liability company organized under New York law, with an office in Woodside, New York.  Defendants Long Yi Wang, Amanda Z. Maw, Jerry Wang, and Vicki Zhang are allegedly all employees of Fu, Shanghai Matsuoka, and/or Matsuoka America.

Plaintiff Teta, a Connecticut resident, and plaintiff Machado, a Massachusetts resident, met with Jerry Wang and Amanda Maw in New York City in June 2001.  At this meeting, Wang told the plaintiffs that he worked directly for Fu and Shanghai Matsuoka, and proposed that the plaintiffs investigate certain printing businesses and opportunities to purchase and enter into printing operations in exchange for a fee of six to fifteen percent of the transaction price.  Compl. at ¶ 12.  Teta mentioned Sir Speedy, with whom the plaintiffs had an established relationship, and with whom the defendants were unfamiliar. Compl. at ¶ 13-14.

In July 2001, the plaintiffs attended another meeting with unspecified representatives

_____

[1]On this motion to dismiss, the court accepts the plaintiffs' version of the facts as set forth in the now-Amended Complaint.

of the defendants and entered into the agreement proposed by Wang and Maw in June, whereby the plaintiffs would investigate printing operations for a fee of six to fifteen percent.  Compl. at ¶ 15.  They also agreed to procure a source for the defendants to purchase Old Corrugated Cardboard ("OCC #11") on an ongoing basis, in exchange for a commission of 0.50 to 1.00 per ton purchased.  Compl. at ¶ 16.  Long Yi Wang and Maw represented that three million dollars was on reserve for the OCC #11 purchase, and that tens of thousands of tonage of OCC #11 would be purchased.  Compl. at ¶ 17-18.

The plaintiffs investigated various Sir Speedy locations for possible purchase by the defendants, including the Waterbury Sir Speedy, which was one of the top Sir Speedy locations in the country.  Compl. at ¶ 24.  The plaintiffs initiated negotiations for purchase of the Waterbury Sir Speedy, and also provided the defendants with information about Sir Speedy nationwide.  Compl. at ¶ 25-26.

In August 2001, Maw informed the plaintiffs that Fu would be coming to New York City from China and wanted to meet with the plaintiffs to discuss the progress of their work.  Compl. at ¶ 29.  Teta drove Long Yi Wang, Maw, Zhang, Fu, and Fu's child, to Connecticut to visit the businesses on which the plaintiffs had provided information, including one in Old Saybrook, and the Waterbury Sir Speedy.  Compl. at ¶ 30-31.  Maw told the plaintiffs that Fu was interested in purchasing 20 or more Sir Speedy locations.  Compl. at ¶ 32.

After September 11, 2001, Long Yi Wang and Maw told the plaintiffs that Fu was

hesitant to engage in business in the United States, and to hold off the Sir Speedy negotiations. Compl. at ¶ 33. The plaintiffs proceeded with the OCC #11 purchases, to Fu's satisfaction. Compl. at ¶ 34-36.

On May 15, 2002, the plaintiffs learned from Maw that Shanghai had purchased Sir Speedy franchise rights for all of China and Hong Kong. Compl. at ¶ 37-38. In June 2002, the plaintiffs spoke with Long Yi Wang, who stated that the plaintiffs were entitled to compensation for bringing the defendants and Sir Speedy together, but that Fu bore responsibility for payment. The plaintiffs met with Long Yi Wang and Maw again that month, who again allegedly admitted that the plaintiffs were entitled to compensation. Compl. at ¶ 42-43. Long Yi Wang promised to set up a meeting with Fu. Compl. at ¶ 44.

In July 2002, Jerry Wang and Maw offered plaintiffs a one-time fee of $10,000 for their work. The plaintiffs rejected the offer. Wang advised them to make a counteroffer to Zhang.

The plaintiffs ultimately offered a figure of $150,000. They allege that Long Yi Wang immediately agreed to the sum.[2] Compl. at ¶ 45-48. The plaintiffs never met with Fu and were never compensated.

## II.  DISCUSSION

### A.  Standard

In evaluating the plaintiffs' complaint on a motion to dismiss, the court "must accept

---

[2]Long Yi Wang was allegedly fired from his position shortly thereafter. Compl. at ¶ 49.

4

as true all factual allegations in the complaint and draw all reasonable inferences in [the plaintiff's] favor." <u>Cruz v. Gomez</u>, 202 F.3d 593, 596 (2d Cir. 2000) (citations omitted). However, "bald assertions and conclusions of law will not suffice to state a claim." <u>Tarshis v. Riese Org.</u>, 211 F.3d 30, 35 (2d Cir. 2000), abrogated on other grounds, <u>Swierkiewicz v. Solema N.A.</u>, 534 U.S. 506 (2002) (internal citations omitted).

### B.    Claims Against Shanghai Matsuoka

No return of service has yet been filed for Shanghai Matsuoka.  The court granted the plaintiffs' motion for additional summons on November 24, 2003.  [Dkt. No. 37]. Summons was issued on February 13, 2004, and no return of service has yet been filed.  As a result, the defendants' motion to dismiss Counts 1, 2, 3, 4, 5, and 7 of the Amended Complaint is denied without prejudice to renew.

### C.    Claims Against Matsuoka America

The plaintiffs allege claims of fraudulent inducement (Count 11), intentional misrepresentation (Count 12), conversion (Count 16), interference with business relations (Count 17), and conspiracy (Count 18) against Matsuoka America, which the plaintiffs claim is a "strawman" company for Shanghai Matsuoka.

#### 1.    Fraudulent Inducement and Intentional Misrepresentation

Both fraudulent inducement and intentional misrepresentation claims rest on the elements of common law fraud.  <u>See, e.g.</u>, <u>Heller v. Daniel J. Laporte & Assoc.</u>, 2003 WL 22789028 (Conn. Super. Ct., Nov 10, 2003) ("Intentional misrepresentation is

5

synonymous with fraudulent misrepresentation."); see also Douglass Wright, et al, Connecticut Law of Torts 389-95 (3rd ed. 1991). "The essential elements of an action in common law fraud are that (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it: (3) it was made to induce the other party to act upon it: and (4) the other party did so act upon that false representation to his injury." Suffield Dev. Assoc. Ltd. P'ship v. Nat'l Loan Investors, L.P., 260 Conn. 766, 777 (2002) (Internal quotation marks omitted). Federal Rule of Civil Procedure 9(b) requires claims of fraud to be pleaded with particularity. See Arito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995) ("plaintiffs must allege facts that give rise to a strong inference of fraudulent intent").

The plaintiffs allege that Matsuoka America, through its agents Maw and Long Yi Wang, made the following false representations in July 2001: that plaintiffs would be paid for their work; that they were to handle or assist in any and all proposals with Sir Speedy or any business entity where contact between the entity and the defendants was first brought about by the plaintiffs; and that they would be paid six to fifteen percent of the transaction price. The plaintiffs allege that Maw and Wang knew these statements to be false and that Matsuoka America had no intention of making payment. Instead, the plaintiffs allege that the statements were made to induce them to investigate American printing businesses and opportunities to purchase. The plaintiffs did so and were never compensated.

6

These allegations are sufficient to state a claim for fraudulent inducement. The plaintiffs have properly alleged all of the four necessary elements: false representations (that the defendants intended to pay the plaintiffs and would allow them to assist in all transactions), knowledge (the defendants had no intention to pay), intention to induce performance (promise of commission price in return for performance), and detrimental reliance (including plaintiffs' investigation of various opportunities and transportation of Fu and other Shanghai Matsuoka representatives).

Moreover, as alleged, Matsuoka America may be held liable for the acts of its agents. "Ordinarily, it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business." See A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 207 (1990). The plaintiffs have carried their burden of pleading at this stage.

### 2. Conversion

The tort of "[c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." Wellington Sys., Inc. v. Redding Group, Inc., 49 Conn. App. 152, 169 (1998) (internal quotation omitted). Though defendants argue that conversion only applies to wrongful deprivation of possession of goods, the Connecticut Appellate Court applied the tort to the wrongful deprivations of funds in, *inter alia*, Durso v. Vessichio, 79 Conn. App. 112 (2003) (sister established prima facie case of conversion in her action against sibling

7

who withdrew all funds from a jointly held bank account). However, a "mere obligation to pay money" may not be enforced by a conversion action. <u>Macomber v. Travelers Prop. and Cas. Corp.</u>, 261 Conn. 620, 650 (2002) (quoting <u>National Union Fire Ins. Co. v. Wilkins-Lowe & Co.</u>, 29 F.3d 337, 340 (7th Cir.1994)). Instead, the plaintiff must show "that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." <u>Id.</u>

Plaintiffs have not made such allegations. Unlike <u>Durso</u>, where the plaintiff alleged that money was taken from her bank account, the plaintiffs here seek payment of sums that they are allegedly owed by the defendants. This is precisely the type of situation in which conversion is not a proper tort. <u>See</u> <u>Macomber</u>, 261 Conn. at 650. The defendants' motion to dismiss Count 16 is therefore granted.

### 3.    Interference With Business Relations (Count 17)

In order to recover for a claim of tortious interference with business expectancies, the claimant must plead and prove that: "(1) a business relationship existed between the plaintiff and another party; (2) the defendant intentionally interfered with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffered actual loss." <u>Hi-Ho Tower, Inc. v. Com-Tronics, Inc.</u>, 255 Conn. 20, 32-33 (2000). It is well-settled that the interfered-with relationship must exist between the plaintiff and a third party. <u>See</u> <u>Wellington Sys., Inc. v. Redding Group, Inc.</u>, 49 Conn. App. 152, 169 (1998).

Here, plaintiffs allege that Matusoka America tortiously interfered with the plaintiffs' business expectancy.  However, the tort only stands when the plaintiff alleges that the defendant interfered with a business relationship with a third party.  Here the relationship was with Matsuoka America itself, or with Shanghai Matsuoka, with plaintiffs' allegation that Matsuoka America was a "strawman."  In either case, a defendant cannot tortiously "interfere" in a business relationship between itself and the plaintiff.  Nor can an agent acting within the scope of its agency be held liable for interference in a relationship between the plaintiff and its principal.  See Murray v. Bridgeport Hosp., 40 Conn. Sup. 56, 60-61 (1984).  Count 17 as to Matsuoka America is dismissed.

### 4.    Conspiracy (Count 18)

In order to state a claim on their civil conspiracy charge, the plaintiffs must properly allege: "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff."  Macomber, 261 Conn. at 647. However, "[a] claim of civil conspiracy . . . is insufficient unless based on some underlying cause of action." Litchfield Asset Mgmt Corp. v. Howell, 70 Conn. App. 133, 140, (2002).  To demonstrate a conspiracy to defraud, the Connecticut Appellate Court held in Litchfield that the plaintiff had to show: "(1) the defendants combined (2) to fraudulently transfer assets, and (3) that the defendants committed an act of fraud pursuant to the scheme (4) that resulted in

9

damage to the plaintiff." Id. at 141.

Here, the court has already held that the plaintiffs have properly pleaded a cause of action for fraudulent inducement. The plaintiffs allege that the defendants combined to fraudulently induce the plaintiffs to investigate business opportunities with no intention of compensating them for their efforts; that they did so to induce; and that the plaintiffs were damaged. This states a cause of action for civil conspiracy.

However, the "intracorporate conspiracy doctrine," when applicable, bars a complainant from proceeding on a conspiracy theory against corporate employees acting within the scope of their employment. Harp v. King, 266 Conn. 747, 776 (2003). The doctrine is founded on the common sense proposition that one cannot conspire with oneself. Id. (internal quotations omitted). Thus, "[e]mployees of a corporation acting in the scope of their employment cannot conspire with one another or with the corporation that employs them; each acts for the corporation and the corporation cannot conspire with itself." Id. (quoting Day v. Gen. Elec. Credit Corp., 15 Conn. App. 677, 684 (1988)).

Plaintiffs allege that Matsuoka America is a "strawman" for Shanghai Matsuoka, and a corporation cannot conspire with itself or with its agents. Count 18 as to Matsuoka America is dimissed.

### D.    Claims Against Defendant Fu

No return of service has yet been filed for Li Quin Fu. As discussed above, the court granted the plaintiffs' motion for additional summons on November 24, 2003. [Dkt. No.

37].  Summons was issued on February 13, 2004, and no return of service has yet been filed.  As a result, the defendants' motion to dismiss Counts 6, 8, 9, 10, and 16, 17, and 18, as to Fu, is denied without prejudice to renew.

### E.     Claims Against LongYi Wang

No return of service has yet been filed for Long Yi Wang.   As discussed above, the court granted the plaintiffs' motion for additional summons on November 24, 2003. [Dkt. No. 37].  Summons was issued on February 13, 2004, and no return of service has yet been filed.  As a result, the defendants' motion to dismiss Counts13, 16, 17, and 18 is denied without prejudice to renew.

### F.     Claims Against Amanda Maw

#### 1.     Intentional Misrepresentation (Count 15)

The plaintiffs rely on the following false statement: they allege that Maw told them in July 2002 that they were entitled to payment in relation to the deal between Sir Speedy and Shanghai Matsuoka, and that she would help arrange a meeting with Fu.  As discussed above, to allege intentional misrepresentation, the plaintiffs must allege (1) a false representation; (2) that the party knew to be untrue; (3) that was made to induce the plaintiffs to act upon it; and (4) that the plaintiffs did so to their detriment.  Suffield Dev. Assoc. Ltd. P'ship, 260 Conn. at 777.

Plaintiffs' Count 15 allegations regarding Maw do not state a claim for intentional misrepresentation.  The plaintiffs have alleged no detrimental reliance on Maw's July 2002

11

statements. Their performance under the purported agreement took place in 2001, before the meeting with Maw in July 2002. As a result, even assuming that the statements referenced by the plaintiffs were false representations by Maw that she knew to be untrue, the plaintiffs have not pled intent to induce or detrimental reliance. As a result, Count 15 is dismissed without prejudice to replead if a factual basis exists to allege the necessary elements.

### 2.    Conversion  (Count 16)

For the reasons discussed above in B.2, in relation to Matsuoka America, the plaintiffs cannot pursue a conversion claim as alleged. Count 16 is dismissed.

### 3.    Interference With Business Relations (Count 17)

As discussed above in relation to Matsuoka America, a defendant cannot be held liable for "interfering" with a relationship in which it is a party, nor can an "agent acting legitimately within the scope of his authority" be held liable for interfering with a business expectancy between his principal and a third party. Murray, 40 Conn. Sup. at 60-61 (1984). Count 17 as to Amanda Maw is dismissed.

### 4.    Conspiracy (Count 18)

As discussed above in relation to Matsuoka America, "[e]mployees of a corporation acting in the scope of their employment cannot conspire with one another or with the corporation that employs them." Harp, 266 Conn. at 776. As a result, Count 18 as to Amanda Maw is dismissed.

12

G.     **Claims Against Jerry Wang**

1.     **Intentional Misrepresentation (Count 14)**

The plaintiffs allege that Wang told them in July 2002[3] that they were entitled to payment in relation to the deal between Sir Speedy and Shanghai Matsuoka, and they would be paid, and that he would arrange a meeting with Fu.  As discussed above, to allege intentional misrepresentation, the plaintiffs must allege (1) a false representation; (2) that the party knew to be untrue; (3) that was made to induce the plaintiffs to act upon it; and (4) that the plaintiffs did so to their detriment." Suffield Dev. Assoc. Ltd. P'ship, 260 Conn. at 777.

As with Maw, plaintiffs' Count 15 allegations regarding Wang do not state a claim for intentional misrepresentation.  The plaintiffs have alleged no detrimental reliance on Wang's July 2002 statements.  Their performance under the purported agreement took place in 2001, before the meeting with Wang in July 2002.  As a result, even assuming that the statements referenced by the plaintiffs were false representations by Wang that he knew to be untrue, the plaintiffs have not pled intent to induce reliance or detrimental reliance.  As a result, Count 14 is dismissed without prejudice to replead if a factual basis exists to do so.

---

[3]Though the Amended Complaint says "July 2001," this is a typographical error, because according to the rest of the complaint the plaintiffs did not learn of Shanghai Matsuoka-Sir Speedy deal until May 2002, so Wang could not have told them they were entitled to "payment in full" on that deal in July 2001. Other portions of the Amended Complaint, e.g. Count 15, note the date as July 2002.

### 2.     Conversion  (Count 16)

For the reasons discussed above in B.2, in relation to Matsuoka America, the plaintiffs cannot pursue a conversion claim as alleged.  Count 16 is dismissed.

### 3.     Interference With Business Relations (Count 17)

As discussed above in relation to Matsuoka America, a defendant cannot be held liable for "interfering" with a relationship in which it is a party, nor can an "agent acting legitimately within the scope of his authority" be held liable for interfering with a business expectancy between his principal and a third party.  Murray, 40 Conn. Sup. at 60-61. Count 17 as to Jerry Wang is dismissed.

### 4.     Conspiracy (Count 18)

As discussed above in relation to Matsuoka America and Amanda Maw, "[e]mployees of a corporation acting in the scope of their employment cannot conspire with one another or with the corporation that employs them."  Harp, 266 Conn. at 776.  As a result, Count 18 as to Jerry Wang is dismissed.

### H.     Claims Against Vicki Zhang

### 1.     Conversion (Count 16)

For the reasons discussed above in B.2, in relation to Matsuoka America, the plaintiffs cannot pursue a conversion claim as alleged.  Count 16 is dismissed.

### 2. Interference With Business Relations (Count 17)

As discussed above in relation to Matsuoka America, a defendant cannot be held liable for "interfering" with a relationship in which it is a party, nor can an "agent acting legitimately within the scope of his authority" be held liable for interfering with a business expectancy between his principal and a third party. Murray, 40 Conn. Sup. at 60-61 (1984). Count 17 as to Vicki Zhang is dismissed.

### 3. Conspiracy (Count 18)

As discussed above in relation to Matsuoka America, Amanda Maw, and Jerry Wang, "[e]mployees of a corporation acting in the scope of their employment cannot conspire with one another or with the corporation that employs them." Harp, 266 Conn. at 776. As a result, Count 18 as to Vicki Zhang is dismissed.

III.    **CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss is GRANTED as to Counts 14, 15, and as to Counts 16, 17 and 18, as to Jerry Wang, Amanda Maw, Vicki Zhang, and Matsuoka America, and DENIED as to the rest of the Amended Complaint, but without prejudice to renew as to claims against Shanghai Matsuoka, Long Yi Wang, and Li Quin Fu.

**SO ORDERED**.

Dated at Bridgeport, Connecticut this 23rd day of February, 2004.

/s/Janet C. Hall_____
Janet C. Hall
United States District Judge

16

CUT AND SAVE

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings should be "freely given when justice so requires." The Rule has been interpreted to allow amendments except upon a showing of bad faith or that substantial prejudice to a party would result. Rogers v. Valentine, 426 F.2d 1361 (2d. Cir. 1970).

_____plaintiffs' motion to file the Amended Complaint is granted. However, the

**PLAINTIFF'S MOTION TO FILE AMENDED COMPLAINT [DKT. NO 26]**

**AND**

the plaintiffs' motion to file the Amended Complaint is granted, and