UNITED STATE DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------x
:
MARIO TETA, JR. AND RONALD MACHADO :
:
               Plaintiffs, :   CIVIL CASE NO.
:   302 CV 2183 (JCH)
:
VS. :
:
LI QUIN FU, SHANGHAI MATSUOKA :
COMPANY, LTD, LONG YI WANG, AMANDA :
Z. MAW, JERRY WANG, VICKI ZHANG AND :
MATSUOKA AMERICA LIMITED, :
:
               Defendants. :   DECEMBER 30, 2004

**DEFENDANTS' MEMORANDUM OF LAW IN
<u>SUPPORT OF MOTION TO DISMISS</u>**

This memorandum of law is submitted by defendant Qinfu Li, mistakenly identified as Li Quin Fu (hereinafter "Li" of "Qinfu Li") in the Summons, Complaint and Amended Complaint, and defendant Long Yi Wang (hereinafter "Wang" of "Long Yi Wang") in support of their motion to dismiss the Amended Complaint ("Complaint") (i) pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure for insufficiency of service of process; and (ii) pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.[1]

The court is well aware of the background of this action, having issued its Ruling on Defendants' Motion to Dismiss dated April 22, 2004 [Docket No. 13]. In the Ruling, the Court, <u>inter</u> <u>alia</u>, denied without prejudice the motions of defendants Li and Wang to dismiss the claims against them. Ruling at 10-11. The Court did not address the merits

---

[1] No return of service has been filed respecting service on Shanghai Matsuoka Company, Ltd. and it has not been served. Accordingly, Shanghai Matsuoka Company, Ltd is not at this time making a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure, and it expressly reserves its right to do so in the event plaintiffs do attempt to effectuate service upon it.

of the motion as it pertained to these defendants because the Court had granted the Plaintiffs' motion for issuance of additional summons, and therefore did not feel it necessary to adjudicate the motion since it appeared Plaintiffs intended to try again to effectuate service on these defendants. However, the plaintiffs have not done so. Since both defendants are still technically parties to the case, and the Court has ruled that any further motions to dismiss should be filed by January 3, 2005, the instant motion is necessary.

## THE APPLICABLE STANDARD

The standard in ruling on a Rule 12(b) motion to dismiss is set forth in the Court's Ruling at pages 4-5.

### I. THE COMPLAINT SHOULD BE DISMISSED AGAINST DEFENDANTS LI AND WANG FOR INSUFFICIENCY OF SERVICE OF PROCESS.

Defendants Li and Wang seek to dismiss the complaint under Fed. R. Civ. P. 12(b)(5) for improper service of process. A motion to dismiss under Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure. Cole v. Aetna Life & Cas., 70 F.Supp.2d 106, 109 D. Conn.1999). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." Id. at 110 (citations omitted).

#### A.   Defendant Wang

Plaintiffs claim to have served Defendant Long Yi Wang pursuant to CPLR §308(2) by leaving the summons and complaint with Jerry Wang at Defendant Long Yi Wang's place of business, 350 Fifth Avenue, Suite 1520, New York, New York. See

Return of Service for Long Yi Wang [Docket No. 10]. CPLR §308(2) provides for personal service upon natural persons by "delivering the summons within the state to a person of suitable age and discretion at the <u>actual place of business</u>, dwelling place or usual place of abode of the person to be served . . . ." (Emphasis added). However, Mr. Wang did not work at offices located at 350 Fifth Avenue, Suite 1520, New York, New York, as of the time of attempted service of the summons and complaint. <u>See</u> Affidavit of Jerry Wang, dated April 23, 2003, previously filed with the Court [Docket No. 15] [hereinafter "Wang Aff."] ¶¶4-5; Affidavit of Vicki Zhang, dated April 23, 2003, previously filed with the Court [Docket No. 16] [hereinafter "Zhang Aff."] ¶4.

The Defendants do not dispute that Mr. Wang once worked at 350 Fifth Avenue, Suite 1520, New York, New York. However, the Affidavits of Jerry Wang and Vicki Zhang submitted in support of the original motion to dismiss conclusively establish that Long Yi Wang did not work at that address as of the date of attempted service of process. <u>See</u> Wang Aff. ¶5; Zhang Aff. ¶4. There is no evidence to the contrary. Plaintiffs have not met their burden of demonstrating service of process on the Defendant. Accordingly, the action must be dismissed against Long Yi Wang for insufficiency of service of process.

      B.    <u>Defendant Li</u>

The Summons, Complaint and Amended Complaint all refer to the defendant as Li Quin Fu. However, the person Plaintiffs intended to sue is named Qinfu Li. Thus, the Summons, Complaint and Amended Complaint are defective and the action is subject to dismissal on this ground alone. In all events, Mr. Li is a Chinese citizen whose principal place of business is in Shanghai, China. (Zhang Aff.¶4; Affidavit of Matthew C. Mason,

3

sworn to December 29, 2004 ("Mason Aff."). The summons itself lists Mr. Li's business address in Shanghai, China. The Return of Service filed with the court indicates that Mr. Li was purportedly served "c/o Matsuoka American, Ltd., at 350 Fifth Avenue, Suite 1520, New York, New York by personally delivering the [summons and complaint] to Jerry Wang . . . who is a person of suitable age and discretion, at that address." [Docket No. 7]. As best we can tell, plaintiffs claim to have served Mr. Li at "his actual place of business" pursuant to CPLR §308(2), even though the summons itself lists Mr. Li's business address as Shanghai, China and the Return purports to serve him c/o Matsuoka America.

It is settled law in New York that "[i]n order for a place to be a person's actual place of business,' that person must be shown to regularly transact business at that place." Underwood v. Shukat, 2002 WL 1315597 at *1 (S.D.N.Y. 2002)(quoting Anon Realty Assocs., L.P. v. Simmons Stanley Ltd., 153 Misc. 2d 954, 957, 583 N.Y.S.2d 778 (Sup.Ct.N.Y.Co, 1992)). See also Cho v. Song, 166 Misc. 2d 129, 133, 631 N.Y.S.2d 484 (Sup.Ct, NY City 1999), *appeal dismissed*, 286 A.D.2d 248, 729 N.Y.S.2d 117 (N.Y.A.D. 1 Dept. Aug 16, 2001) ("In order for a place to be a person's actual place of business that person must be physically present with regularity . . . and must be shown to regularly transact business at that place.")(quoting cases).

Plaintiffs have not effectuated valid service on Mr. Li at his "actual place of business." There is no evidence Mr. Li ever transacted business at 350 5th Avenue, New York, New York, let alone regularly transacted business there. In addition to the Affidavit of Vicki Zhang (Zhang Aff. ¶4), the deposition testimony of Jerry Wang, Amanda Maw and Vicki Zhang establish that Mr. Li did not work at that location, did not

4

transact business there and, in fact, was only present at the offices at 350 5th Avenue, New York, New York once or twice in 2001, and then only to visit the offices.[2] Mason Aff. Ex. A, Jerry Wang Dep. Tr. pages 29, 30, 33-34; Ex. B, Amanda Maw Dep. Tr. Page 19; Ex. C. Vicki Zhang Dep. Tr pages 23-29, 34-36, 46-48, 50–52.

We expect that Plaintiffs will point to a business card of Qinfu Li in support of their claim of proper service or entitlement to discovery regarding Mr. Li's actual place of business. The card identifies Mr. Li as the Chairman & CEO of Shanghai Matsuoka Co. Ltd, and contains contact information for the "Shanghai Head Office," the "Beijing Office," and the "American Branch." (Mason Aff. Exhibit D). The American Branch is located at 350 5th Avenue, New York, New York. Id. However, there is nothing on the face of the card that indicates that Mr. Li works or worked at the New York location or regularly transacts business there. Indeed, the card does nothing more than indicate the primary office locations of Shanghai Matsuoka Co., LTD, and the location of an "American Branch."

In sum, Defendant Li's actual place of business is Shanghai, China. He did not and does not work, let alone "regularly transact business" at the place of delivery of the summons and complaint and therefore the attempted service fails.

## II. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANT LONG YI WANG.

Plaintiffs purport to assert claims of Intentional Misrepresentation (Count 13), Conversion (Count 16), Interference with Business Relations (Count 17), and Conspiracy

---

[2] Matsuoka America and Bridge Trading shared office space at the New York location, although they were separate and entirely unrelated companies.

(Count 18) against defendant Long Yi Wang. Counts 16, 17 and 18 have already dismissed by the Court against the individual defendants Jerry Wang, Amanda Maw and Vicki Zhang. See Ruling at 7 – 8, 12, 14 (Count 16, Conversion); 8 – 9, 12, 14, 15 (Count 17, Interference with Business Relations); and 9 -10, 12, 14, 15 (Count 18 Conspiracy). For the same reasons, those claims against Long Yi Wang should be dismissed.[3]

Moreover, the misrepresentation claim against Mr. Wang (Count Thirteen) is deficient for the same reasons that led the Court to dismiss the claims against Jerry Wang and Amanda Maw. Ruling at 11 – 12, 14. The allegations with respect to time, place and content are inadequate. In addition, it fails to come close to alleging an actionable misrepresentation since neither of the alleged "statements" (Count Thirteen ¶50) could possibly have been relied upon by the Plaintiffs to their injury. Plaintiffs first assert that Long Yi Wang misrepresented Li Quin Fu's wealth and ability to pay under the alleged agreement. (Id.). However, Plaintiffs' substantive claim is not an inability to pay by the Defendants, but rather a refusal to pay. Plaintiffs next claim false statements made on June 7, 2002 regarding their entitlement to compensation – well after Plaintiffs purportedly performed under the alleged agreement and after Shanghai Matsuoka allegedly entered into its agreement with Sir Speedy. (See Amended Complaint ¶37). There is no performance alleged by Plaintiffs after June 7, 2002 and therefore they did

---

[3] The detailed substantive arguments pertaining to these various claims against Long Yi Wang (and the other defendants) are contained in Defendants' Memo of Law in Support Of Motion to Dismiss, filed 4/24/03 [Docket No. 14] and in Defendants' Memo in Opposition to Motion to Amend Complaint and in Reply to Plaintiffs' Objection to Motion to Dismiss, dated 9/10/03 [Docket No. 31]; which are incorporated herein by reference, if the Court feels any need to examine those arguments again.

not and could not rely on those statements, even if made, to their injury. See Ruling at 11-14.

### III. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANT LI

Plaintiffs also purport to allege claims against Li Quin Fu as follows: Piercing the Corporate Veil (Count 6), Fraudulent Inducement (Count 8), Intentional Misrepresentation (Count 9), Unjust Enrichment (Count 10), Conversion (Count 16); Interference with Business Relations (Count 17); and Conspiracy (Count 18).

#### A. Piercing the Corporate Veil (Count 6)

In Count Six plaintiff purports to allege a claim against defendants Mr. Li entitled "pierce the corporate veil." Connecticut courts will disregard the fiction of a separate legal entity and pierce the shield of immunity afforded by a corporate structure when the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor. Davenport v. Quinn, 53 Conn. App. 282, 299-300, 730 A.2d 1184 (1999); Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc., 187 Conn. 544, 552 (1982). However, the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice. Id. at 557; United Electrical Contractors, Inc. v. Progress Builders, Inc., 26 Conn.App. 749, 755, 603 A.2d 1190 (1992). Such exceptional circumstances would include instances "where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." (Internal quotation marks omitted.) SFA Folio Collections, Inc. v. Bannon, 217 Conn. 220, 230, 585 A.2d 666, cert. denied, 501 U.S. 1223, 111 S.Ct. 2839, 115 L.Ed.2d 1008 (1991).

Connecticut courts have approved of two situations where the corporate form may be disregarded and a controlling stockholder held liable under an "alter ego" theory: the so called "instrumentality" rule or the "identity" rule. *Id.,* at 553; Zaist v. Olson, 154 Conn. 563, 578, 227 A.2d 552 (1967). The instrumentality rule requires proof of three elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc., supra, 187 Conn. at 553.

The identity rule has been stated as follows:

> If a plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

Hersey v. Lonrho, Inc., supra, 73 Conn.App. at 87, 807 A.2d 1009. See Davenport v. Quinn, 53 Conn. App. At 300; Zaist v. Olson, 154 Conn. 563, 573-74, 227 A.2d 552 (1967).

The plaintiff must, therefore, allege sufficient facts necessary to plead either the instrumentality rule or the identity rule. Emma Rosina, LLC v. Bilides Blg. &

Excavating, LLC, 2002 WL 31898066 at *3 (Conn. Super.) Here there are no allegations at all regarding the identity rule.

With respect to the instrumentality rule, there are no specific factual allegations about how the defendant exercised or could exercise the requisite control, whether it be through stock ownership, being an officer or director of the company or otherwise. There are also no specific allegations regarding how that control was used by the defendant to commit fraud or wrong, or to perpetrate a violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiffs' legal rights. There are no specific factual allegations concerning how such control and breach of duty proximately caused the injury or unjust loss complained of. There are no specific factual allegations concerning alleged unity of interest and ownership such that the independence of the corporations had in effect ceased or had never begun. There are no specific factual allegations supporting the notion that an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the company to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

Connecticut courts have consistently granted motions to strike claims to pierce the corporate veil where the plaintiff has failed to allege sufficient factual support for the claim. In Traina Enterprises, Inc. v. Manousos, 2003 WL 1477798 (Conn. Super.), the complaint alleged that the individual defendant Sebastian Traina was the president, sole director and sole shareholder of Traina Enterprises, and that he "exerted complete domination of the finances and of its policies and business practice ... such that the corporate entity of Traina Enterprises as to such matters had at the time no separate mind,

9

will or existence of its own."[4]  Id. at 3. The court found these allegations insufficient and held that "[s]ince there are not sufficient specific facts alleged before this court that would support the application of either 'instrumentality' or 'identity' rules, permitting this court to disregard the corporate form, the motion to strike . . . is granted."  Id. (citing Leisure Resort Technology, Inc. v. Trading Cove, Superior Court, judicial district of Middlesex at Middletown, Docket No. CV 00 0091180 (October 13, 2000, Gordon, J)).

Similarly, in Emma Rosina, LLC v. Bilides Bldg. & Excavating, LLC, 2002 WL 31898066 (Conn. Super.), the plaintiff alleged:  "At all relevant times and upon information and belief, there was such a unity of interest between Bilides, LLC and Bilides that for all intents and purposes there was never any individuality and separateness between Bilides LLC, and Bilides, and that Bilides, LLC is the instrumentality and alter-ego of Bilides, LLC."  Id. at *3.  The court held that "[t]hese allegations are assertions, made under 'information and belief,' of legal conclusions and are not supported by facts necessary to demonstrate the requisite control that is required so that the plaintiff can invoke the court's authority to pierce the corporate veil under either the instrumentality or identity rules".  Id.  "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged."  Id..  See also Novametrix Medical Systems v. BOC Group, Inc. 224 Conn. 210, 215, 618 A.2d 25 (1992); Regulbuto v. General Health Management, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV910371842 (January 29, 1991, Clark, J.) (3 Conn. L. Rptr. 686) (court granted defendant's motion to strike breach of contract claim against individual owner of corporation because plaintiff failed to allege

---

[4] This is the identical allegation made by the plaintiffs here.

10

sufficient facts to satisfy first element of the instrumentality rule); Weinberg v. Isom, Superior Court, JD of Stamford-Norwalk at Stamford, Docket No. CV940140152 (May 8, 1995, Karazin, J.) (court granted defendant's motion to strike because "plaintiff has failed to allege any independent facts demonstrating the requisite control necessary to pierce the corporate veils of [defendant corporations] under either the instrumentality or identity rules"); Findell v. Koos, 2002 WL 532409 at *4 (Conn. Super.)(same).

Those rare cases where the corporate veil has been pierced are factually dissimilar to the allegations of the plaintiff here. For example, in Davenport v. Quinn, 53 Conn. App. 252 301-03, 730 A.2d 1184 (1999) the defendant "was the sole shareholder, director and officer of several corporations, did not maintain separate bank accounts for each corporation, used one corporation to pay off the debts of the other, and depleted corporate resources to avoid a default judgment. See KLM Industries v, Tylutki, 75 Conn. App. 27, 33-34, 815 A.2d 688 (2003) (reversing trial court's decision to pierce the corporate veil where individual defendant was not a sole shareholder or director and "exercised no more control than that of any president of a closely held corporation"); Labrie Asphalt & Construction Co. v. Quality Sand and Gravel, Inc., 2001 WL 286843 at *7. (D. Conn.) (Hall, J.) (Corporate veil pierced where corporations ceased to operate as separate entities, monies commingled, corporate formalities ignored).

There are no allegations of lack of adherence to corporate formalities, commingling of funds, or any other facts to support the plaintiff's claim. In sum, mere conclusory re-statements of the applicable legal standard are insufficient to meet Plaintiffs' pleading burden. Triemer v. Bobsan Corp., 70 F.Supp.2d 375, 377 (S.D.N.Y.1999); Abbacor v. Miller, 2001 WL 1006051 at *5 (S.D.N.Y.)(Aug 31, 2001).

11

In sum, the Amended Complaint is equally lacking under either an alter ego or instrumentality rule theory. There are no allegations at all relevant to an identify claim, such as failure to adhere to corporate formalities, commingling of bank accounts, etc. With respect to the instrumentality theory, the Amended Complaint contains only bald, conclusory assertions. Accordingly, Count nine of the complaint should be dismissed.

> B. <u>Fraudulent Inducement and Misrepresentation</u> (Counts 8 and 9).

The Court has already dismissed the fraud based counts against the individual defendants Amanda Maw, Jerry Wang and Vicki Zhang. For those same reasons the claims in Counts Eight and Nine of the Amended Complaint for fraudulent inducement and intentional misrepresentation should be dismissed against Defendant Li. Ruling at 11 – 14.

Paragraph 50 of Count Eight provides as follows:

> On or about the first week in July 2001 the defendants did through the use of his agents, employees and/or friends Jerry Wang and Amanda Maw induce the Plaintiffs to enter into an agreement with Fu's company by representing to him Fu's enormous personal wealth and his financial business success with his company Shanghai Matsuoka as comfort for their willingness to engage in the work of investigating printing operations and the strength of an agreement and dealings of such a man and to investigate printing businesses and opportunities to purchase in exchange for a fee of six (6) to fifteen (15) percent of the transaction price and that their agreement would be honored and the Plaintiffs would be allowed to handle or assist in any and all proposals with Sir Speedy without limitation or any business entity where contact with said business and the Defendants was initiated or brought about by efforts of the Plaintiffs.

The Second Circuit in <u>Acito v. IMCERA Group, Inc</u>., 47 F.3d 47, 51 (2d Cir.1995) summarized the pertinent law as follows:

> Because Rule 9(b) is intended "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit," O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir.1991), **we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a "license to base claims of fraud on speculation and conclusory allegations**," Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir.1990). **Accordingly, plaintiffs must allege facts that give rise to a strong inference of fraudulent intent**. Shields, 25 F.3d at 1128; accord Mills, 12 F.3d at 1176; O'Brien, 936 F.2d at 676; Ouaknine v. MacFarlane, 897 F.2d 75, 80 (2d Cir.1990). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields, 25 F.3d at 1128.

Acito v. IMCERA Group, Inc., 47 F.3d 47, 51-52 (2d Cir.1995) (emphasis added).

Plaintiffs base their claims of fraud and misrepresentation on rank speculation and conclusory allegations in direct contravention of the Second Circuit's teaching. The requirement of specifying "the time, place, speaker and content of the alleged misrepresentations" is honored in the breach. With respect to time, the re-pled claim makes a general reference to "on or about the first week in July 2001"-- not a specific date, and is also internally inconsistent with paragraphs 11 and 12 which suggest the relevant time was June 2001. With respect to place, <u>no</u> allegations are made. With respect to speaker, no differentiation is made between Jerry Wang and Amanda Maw, so it is impossible to tell which person made the alleged statements or how such statements were made -- orally or in writing. As to content, the allegations appear to be that misrepresentations were made about (i) Li Quin Fu's personal wealth and financial success, (ii) intention of honoring an agreement to pay a fee of 6 to 15 percent of the

13

purchase price of acquisitions, and (iii) allowing Plaintiffs to handle or assist in all Sir Speedy proposals.  However, there are no specific factual allegations that would or could establish the requisite "strong inference" of fraud, such as allegations to show that defendant had both motive and opportunity to commit fraud, or strong circumstantial evidence of conscious misbehavior or recklessness." Acito, 47 F.3d at 51 – 52.

Moreover, the Plaintiffs seek to assert a claim against Mr. Li individually by reason of statements purportedly made by two of his "agents, employees, and/or friends". (Count Eight, Par. 50).  While a principal may be liable for the misrepresentations of his/her agent made within the scope of his/her apparent authority, he is not liable for the misstatement of his friends.  The proposed re-pled claim against Li Quin Fu fails to state a claim for fraudulent inducement.

The same analysis applies to Count Nine for intentional misrepresentation.  The counts are largely the same, the only meaningful differences being (i) that Count Eight incorporates by reference paragraphs 1-49 of Count One, while Count Nine incorporates only paragraphs 1-37, and (ii) that certain of the purportedly false statements in Count Eight are not part of Count Nine.  Compare Count Eight ¶50 with Count Nine ¶38.  Moreover, the two "misstatements" allegedly made by Jerry Wang and Amanda Maw (Count Nine ¶38) are not actionable even if made.  The first statement involves only Li Quinn Fu's wealth and his financial success with Shanghai Matsuoka.  The second statement concerning entitlement to a fee for the Sir Speedy deal was purportedly made on July 15, 2001, which is in direct conflict with their earlier pleading in the same count that the Sir Speedy deal occurred in May, 2002 (¶37).  Assuming the date is in error, and Plaintiffs intended to say July 15, 2002, the alleged statement occurred after all of

14

Plaintiffs' alleged performances and could not have been relied on by the Plaintiffs to their injury.  See also Ruling at 11-14.

        C.     Unjust Enrichment (Count 10)

The purported claim of unjust enrichment against Mr. Li (Count Ten) fails to state a claim.  First, the complaint asserts the existence of a contract (Comp. ¶15) and contract remedy (money damages) against each of the defendants. Therefore the precondition of lack of a remedy under the contract does not exist.  Gagne v. Vaccaro, 255 Conn. 390, 401, 766 A.2d 416 (2001)( "[L]ack of a remedy under the contract is a precondition for recovery based upon unjust enrichment").

The claim also alleges that "the Defendant was unjustly enriched and benefited by the work performed by the Plaintiffs that resulted in *the Defendant* purchasing the franchise rights from Sir Speedy for all of China and Hong Kong."  Amended Complaint, Count Ten ¶52 (emphasis added).  However, Plaintiffs expressly allege in paragraph 37 of the Amended Complaint that "Shanghai Matsuoka purchased the franchise rights from Sir Speedy . . ."  Thus, the claim is facially inconsistent and defective as Plaintiffs themselves assert that it was Shanghai Matsuoka – not Defendant Li – that entered into the deal with Sir Speedy.  Moreover, it contains no specific allegations of how Mr. Li -- as opposed to Shanghai Matsuoka -- benefited from the purported breach, let alone how any such benefit was bestowed upon Mr. Li or was unjust.  Plaintiffs' simple, conclusory factual allegations are insufficient to state a claim for unjust enrichment.

        D.     Conversion (Count 16)

See Ruling at 7-8.

  E. <u>Interference with Business Relations</u> (Count 17)

<u>See</u> Ruling at 8-9.

  F. <u>Conspiracy</u> (Count 18)

<u>See</u> Ruling at 9-10.

**IV. THE CLAIMS AGAINST SHANGHAI MATSUOKA ARE NOT ADDRESSED HEREIN SINCE IT IS UNDISPUTED THAT IT HAS NOT BEEN SERVED WITH THE COMPLAINT**

No return of service has ever been filed with respect to purported service of process on Shanghai Matsuoka. More than 120 days has expired since the issuance of the Summons, and the additional summons was not served. Since Shanghai Matsuoka has not been served and the Plaintiffs do not claim that it has been served, no response to the proposed Amended Complaint is made on its behalf. Thus, Count's One through Five and Count Seven, which are asserted against Shanghai Matsuoka alone, are not addressed herein. Shanghai Matsuoka respectfully reserves its right to respond to the Amended Complaint if and when it is ever served with process in the action.

**CONCLUSION**

For the reasons set forth above, the claims against Defendants Long Yi Wang and Qinfu Li should be dismissed in its entirety.

            THE DEFENDANTS LI QUIN FU AND LONG YI WANG

    By: _____
        Matthew C. Mason (ct 15291)
        Gregory and Adams, P.C.
        190 Old Ridgefield Road
        Wilton, CT 06897
        (203) 762-9000 (Tel.)
        (203) 834-1628 (Fax)
        mmason@gregoryandadams.com

## **CERTIFICATION OF SERVICE**

This is to certify that a copy of the foregoing was served by United States first class mail, postage prepaid this 29th day of December, 2004 to all counsel of record as follows:

George Kent Guarino, Esq.
Ed Lerner, Esq.
Lerner & Guarino, LLC
112 Prospect Street
Stamford, CT 06901

                                                             By_____
                                                                Matthew C. Mason (ct 15291)
                                                               Gregory and Adams, P.C.