UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------

MARIO TETA, JR. and RONALD MACHADO,

          Plaintiffs,

    -v-

LI QUIN FU, SHANGHAI MATSUOKA
COMPANY, LTD, LONG YI WANG,
AMANDA Z. MAW, JERRY WANG, VICKI
ZHANG and MATSUOKA AMERICA LIMITED,

          Defendants.

---------------------------------------------------------

Civil Case No:
302 CV 2183 (JCH)

JULY 1, 2005

## MEMORANDUM IN SUPPORT OF OBJECTION TO
## MOTION TO DISMISS OF DEFENDANT LI

### I.  STANDARD OF LAW

For the purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, the court must take the well-pleaded material allegations of the complaint as admitted. Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 173-175, 86 S.Ct. 347, 348-349, 15 L.Ed.2d 247 (1965); George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 553 (2d Cir.1977). In addition, courts must construe a complaint liberally in the plaintiff's favor, Scheuer v. Rhodes, 416 U.S. 232, 236-37, 94 S.Ct. 1683, 1686-87, 40 L.Ed.2d 90 (1974), and may grant a motion to dismiss only if it is beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80

(1957); McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980).

While Fed.R.Civ.P. 8 is liberal and does not require a party to plead "ultimate facts," or "facts sufficient to constitute a cause of action," the complaint must plead facts sufficient to give the defendant "fair notice" of the claims against him. 2 Moore's Federal Practice, § 8.04[1] (3d ed.), citing Kelly v. Schmidberger, 806 F.2d 44 (2d Cir.1986).

In deciding a motion to dismiss "the court 'must accept the material facts alleged in the complaint as true,' " Staron v. McDonalds Corp., et al., 51 F.3d 353, 355 (2d Cir.1995) (citing Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir.1994)), and draw all reasonable inferences in favor of the pleader. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court must determine whether the plaintiff has stated a claim upon which relief may be granted. Fischman v. Blue Cross Blue Shield, 755 F.Supp. 528 (D.Conn.1990). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); Frasier v. General Elec. Co., 930 F.2d 1004, 1007 (2d Cir.1991).The Court must construe the complaint liberally in the Plaintiff's favor, Scheuer v. Rhodes, 416 U.S. 232, 236-37, 94 S.Ct. 1683, 1686-87, 40 L.Ed.2d 90 (1974), and may grant a motion to dismiss only if it is beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); McLain v.

Real Estate Board of New Orleans, Inc., 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980).

## II. Service of Li

A)    The defendant comments in his brief that the Li Quin Fu's name should be Quin Fu Li. However, counsel for the defendant has drafted numerous pleadings over the years as this case has been progressing in the very name and on behalf of Li Quin Fu. By way of limited example counsel has identified his own client exclusively as Li Quin Fu in his April 25, 2003 *Motion to Dismiss*, without any caveat, in his September 23, 2003 *Memorandum in Opposition to Motion to Amend Complaint and in Reply to Motion to Dismiss*, as well as, in all of his notices of depositions issued in July of 2003. In fact, he executed a J*oint 26(f)* report representing to this honorable court without any exception or notation that he was acting on behalf of a Li Quin Fu. The pleadings evidencing use of this name by his own counsel are far too numerous to name. Counsel for the defendant, over a lengthy period of time represented one Li Quin Fu in his pleadings filed in connection with this case and never once argued that the name was somehow incorrect, not even in his previous *Motion to Dismiss*. It raises the question did counsel ever speak to his client over the extended time period he was filing all of these pleadings in the "wrong" name and if so what name was he calling his client during this time? One could reasonably surmise that he was calling him the wrong name and Li was responding to said name? Otherwise such argument would logically and most certainly have been presented in his Motion to Dismiss and subsequent pleadings. If for over a year the defendant's own counsel was confused and uncertain as to the precise name of his own client, the person whose very rights

3

and interest he is charged with protecting and the person who retained him and is responsible for paying his fees, what chance could the plaintiffs have correctly identifying such a slippery and amorphous defendant.

Moreover, is counsel representing or certifying to this honorable court that the defendant does not and did not go by that name in his life through personal knowledge? or is he simply offering the word of his client, a client who refuses to appear, to testify at a deposition, to be cross examined? The pleadings filed by his own counsel on his behalf these years should be judicially noticed as a judicial admission of at least the fact that Li Quin Fu is a name the defendant goes by or accepts as his own.

The plaintiffs served the defendant pursuant to CPLR Section 308 at his actual place of business. Service of process under New York law is governed by CPLR § 308, which provides, in relevant part, as follows:

> "Personal service upon a natural person shall be made by any of the following methods:...2 By delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by mailing the summons to the person to be served at his last known residence".

The defendant argues to this honorable court, as well as, in the supporting affidavits of Mr. Wang and Ms. Zhang, that Mr. Li did not work at suite 1520, 350 Fifth Avenue New York, New York. In fact Ms. Zhang in her affidavit states that Li's office is in Shanghai China, despite Li's Own conduct and representations to the plaintiff to the contrary. Under New York law, a defendant can have more than one actual place of business for purpose of service of process. N.Y.McKinney's CPLR 308(2).

4

The defendant seeks to impress upon the court that there all of these boundries and distinctions between entities, people and offices however the evidence suggest otherwise.  As the plaintiffs have argued in their Reply to Objection to Amendment, as well as, in  previous pleadings submitted to this honorable Court but believes is worth highlighting once again, is that the Plaintiffs respectfully request that this honorable court take judicial notice of the fact that the Plaintiffs have sued the company Shanghai Matsuoka a Chinese Corporation based in Shanghai, China (See AFF., Zhang,), the company Matsuoka America based in New York, and in their individual capacity Jerry Wang, Long Yi Wang, Amanda Maw, Vicki Zhang and Li Quin Fu yet despite the "entity" not to mention geographical distinctions between these two "separate" companies and the many current and former individual Defendants, a single and solitary appearance has been filed on behalf of each and every defendant by a small Wilton, Connecticut law firm.

Evidencing that so weak is the facade of a distinction between the two companies controlled by Li Quin Fu and so implausible, even to the Defendants, that there could ever be conflicting interest between these "two" Li Quin Fu controlled companies that it didn't even warrant each corporation faking it and having its own attorney. So controlled and beholden to Li Quin Fu and the companies he runs not a single individual retained their own counsel despite the personal liability exposure. This glaringly illustrates precisely how intertwined these parties are, as well as, the shell game the Plaintiffs face.  Which hat were these parties wearing on any given day that they where entering into agreements, making statements and breaching them?

The symbiotic interest and actions of these companies and individuals stretch from China to Connecticut in this matter and the dodging of liability is both disturbing and suspect. It should not be lost upon this honorable court that the solitary voice in this litigation for the China Corporation, the New York Corporation and all five of the original individual Defendants flows from the pen of a single law office. The Plaintiffs too faced a single voice speaking for multiple shifting entities and overseas individuals." This description of shifting entities, changing people and roles is becoming more accurate as discovery progresses. Defendant Li Quin Fu's façade is cracking and the truths mistruths, and games the defendants are playing are becoming undeniable. On December 20, 2002 when service was first made upon defendant Li and Long Yi Wang at 350 Fifth Avenue, Suite 1520, New York, New York the defendants' ran to this honorable court and filed sworn affidavits in support of a motion to dismiss. In the sworn affidavit of defendant Vicki Zhang (See attached Exhibit 1) it was stated to this honorable court under oath that "Shanghai Matsuoka is a Chinese corporation and its principal place of business is in Shanghai, China. It does not have any offices in New York or Connecticut." She further gave sworn testimony to this court that "Li Quin Fu has never worked at this office location". Additionally, in the sworn affidavit of defendant Jerry Wang (See attached Exhibit 2), Mr. Wang stated under oath to this honorable court that "To the best of my knowledge, Li Quin Fu has never worked at this office." These sworn statements were offered to this court to invalidate the service and discredit the plaintiffs' understanding of the companies, its offices and who they were working for. These affidavits were dated April 23, 2003.

6

However, on August 10, 2004, the plaintiffs' deposed Dan Beck, the president of Sir Speedy who produced business cards at his deposition that had been exchanged at a meeting he had with Li Quin Fu and Vicki Zhang in 2002. Li Quin Fu's business card as provided to the President of Sir Speedy in his dealings with Sir Speedy proclaim him Chairman and CEO of Shanghai Matsuoka., LTD with offices in Shanghai, Beijing and, precisely as the plaintiffs were lead to believe an "American Branch, Empire State Building, 350 Fifth Avenue, Suite 1520, New York, New York, 10118  TEL: +1(212) 736 3188  FAX:+ 1(212)594 1633..."   (See attached Exhibit 3). Further, the business card of Vicky Zhang produced at the deposition displays Matsuoka America Co., LTD and Shanghai Matsuoka Co., LTD as mirror images of one another with, yet again, offices in Shanghai and 350 Fifth Avenue., Suite 1520, New York, New York, 10118. (See attached Exhibit 4).

The concept of Matsuoka Shanghai and Matsuoka  America as being blurred and  cleverly manipulated to gain advantage in dealing with the plaintiffs has been at the forefront of this litigation since its inception and lies at the very heart of the issue of Li Quin Fu, his involvement, liability and representation.  The business cards produced by the President of Sir Speedy at his deposition are the first documentary evidence that fully contradicts the defendants affidavits and supports the plaintiffs' allegations regarding the slippery and morphing involvement of these "different" yet very much the same companies that are so closely controlled by one Mr. Li Quin Fu.  These cards are  clear evidence of precisely the type of symbiotic companies and duel office locations that the defendants were representing to everyone from the Plaintiffs to Sir speedy in their quest for American printing operations. Certainly it is understandable

7

that the situation is more than a little murky to the Plaintiffs if the verbal representations by the defendants as to what company was doing what, what office was with what company and what company Li and the others were working for at any given moment were even less forthright than the business cards.

The affidavits, although cleverly worded with safe house language such as, "to the best of my knowledge" certainly left the plaintiffs with the impression that perhaps they misunderstood, perhaps Li and/or Shanghai Matsuoka has no office at the Empire State Building as they had been led to believe, perhaps service must be made in China. Thanks to discovery and the retention of business cards by Sir Speedy from the time period in question it appears that the defendants claims and denials are far less than credible. The defendants' affidavits and motions for dismissal would lead one to believe that the plaintiffs were simply out of their minds for believing or even suggesting that Li Quin Fu or Shanghai Matsuoka had an office at 350 Fifth Avenue., Suite 1520, New York, New York or were in any way connected to Fu or each other. The reality is however, that Vicky Zhang and Jerry Wang are filing affidavits swearing that   "Shanghai Matsuoka is a Chinese corporation and its principal place of business is in Shanghai, China. It does not have any offices in New York or Connecticut.", "Li Quin Fu has never worked at this office location" and "To the best of my knowledge, Li Quin Fu has never worked at this office." Meanwhile Li Quin Fu had been handing out his business card proudly representing to others his Shanghai Matsuoka office at 350 Fifth Avenue., Suite 1520, New York, New York, the very same address and suite where Wang and Zhang work and where served. Yet they would have this court and others believe Li Quin Fu, Matsuoka America, Shanghai Matsuoka and 350 Fifth

8

Avenue, Suite 1520, New York, New York, have absolutely nothing to do with each other.    These affidavits are most suspect and should be given the weight and value they deserve in light of the evidence uncovered in discovery.

Furthermore, currently there is not a single piece of evidence other than the highly suspect and self serving affidavits and statements of Zhang and Wang to contradict Li Quin Fu's own business cards as to where his office is Li  has been served and he now manipulates the process by choosing to fight through his employees, mere minions who obviously do not even possess their boss's business cards, forcing them to make sworn statements to the court about his whereabouts and offices only to be thwarted by the most direct link to date to Mr. Li, the business card he presented to the President of Sir Speedy during franchise discussions.  The only way to truly know what Mr. Li's position is would be to hear it from him. He, however, is choosing to hide from taking part in this action. In fact Li stands before this court seeking to benefit from his own fraud. In light of the business card Li was handing out to others the denial by Li's employees that he never had an office where he was served and the denial of the same by Li is all but tantamount to an admission that li was in fact involved in some degree of misrepresentation.  Certainly this honorable court can not accept that it is simple innocent coincidence that at the inception of this lawsuit the plaintiffs plead that Mr. Li had an office at 350 Fifth Avenue, Suite 1520, in the Empire State Building and served him there only to have Li's business card turn up at the deposition of Sir Speedy's president a year later showing his office at the exact location where the plaintiff's said he had an office. Li's stands before this court more or less arguing that He knows what he led everyone to believe and for this court

to trust him when he states that his business cards are a lie. Li claims he handed out misleading and fraudulent business cards as to his office location and wants to be rewarded with insulation from service as a benefit of his deceptive design. However, there is no evidence greater, unbiased or more pure before this honorable court than the very card handed to Sir Speedy a good faith non-party with whom Li was in business dealings and had no reason to lie to.   The law and the principals of equity and justice should not permit defendant Li to gain advantage by calling into question his own credibility. The Plaintiffs do not see any unbiased evidence or evidence not categorically selfserving that would give credence to the argument that the card can not be believed.  In the alternative however, should it be that Li was lying, deceiving and was ensconced in a world of fraud and deception he should not be shielded by the law.  He came to the United States to conduct business.  He represented where his office was and even handed out tangible evidence of where his office was.  The office location is not a remote P.O box or a closed and boarded up movie theater, it is in fact an office, a place of business where other defendants and employees of Li worked and interacted in a business capacity in this country with others and with the plaintiffs on the agreements in question.  There is every reason to believe his office was there and only the word of his subordinate defendants to believe it is not.  If his office truly was not there his misrepresentations, his props (business cards), the location of his employees and co-workers have pierced the veneer of a fraud and in turn now demonstrate evidence of a truth and absent defendant Li testifying himself, subject to cross examination to the contrary there is simply no conceivable princible upon which to reject all this evidence of truth.

The defendants wish to dismiss this action against Li on the grounds that he has not yet been served, however, the plaintiffs have uncovered during discovery evidence supporting the plaintiff's contention that in Li has been served because he has been served at his American office in the Empire state building.  The uncovering of Mr. Li's business card most certainly gives support to the plaintiffs' assertion that Mr. Li has an actual place of business in THE United States that he uses to regularly conduct business where service was made.

### III.  Li's Fraudulent Inducement and Misrepresentation

To state a claim for fraudulent inducement under Connecticut law based upon misrepresentations, a plaintiff must demonstrate (1) that a false representation was made as a statement of fact; (2) that it was known to be false; (3) that it was made to induce the action by the other party; and (4) that the party acted on the statement to his or her detriment. Topf v. Warnaco. Inc., 942 F.Supp. 762, 768 (D.Conn.1996); Miller v. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811, 1813 (1981). The plaintiff's reliance upon another's misrepresentation must be justifiable or reasonable. Amatulli v. People's Bank, 917 F.Supp. 895, 906 (D.Conn.1996).  [t]he essential elements of an action in fraud ... are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Miller v. Appleby, 183 Conn. 51, 438 A.2d 811, 813 (1981). "A party's reliance upon another's misrepresentation must be justifiable or reasonable." Topf v. Warnaco, Inc., 942 F.Supp. 762, 768 (D.Conn.1996).

11

The essential elements of an action for fraudulent or intentional misrepresentation are that: "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." Barbara Weisman, Trustee v. Kaspar, 233 Conn. 531, 539, 661 A.2d 530 (1995); accord Billington v. Billington, 220 Conn. 212, 217, 595 A.2d 1377 (1991); see also Citino v. Redevelopment Agency of the City of Hartford, 51 Conn.App. 262, 275, 721 A.2d 1197 (1998) ("[a]ll of these ingredients must be found to exist; and the absence of any one of them is fatal to a recovery."). "The party asserting such a cause of action must prove the existence of the first three of these elements by a standard higher than the usual fair preponderance of the evidence, which higher standard [the Supreme Court of Connecticut has] described as 'clear and satisfactory' or 'clear, precise and unequivocal.' " Barbara Weisman, Trustee v. Kaspar, supra, 233 Conn. 540.

While it is true that such representations must ordinarily be those regarding past or present facts, there is an exception when a promise is made with a present intent not to fulfill it. Paiva v. Venech Heights Construction Co., 159 Conn. 512, 515, 271 A.2d 69 (1970)

The defendants argument that the defendant is not responsible for the misstatements of his friends because the misstatements were by his agents and/or employees within the scope of his directives and his design, despite the fact that those directives and designs were improper, that being to basically mislead and deceive the plaintiffs. Further, at the very least the factual allegations establish a strong inference

12

of fraud evidencing motive and opportunity to take advantage of the plaintiffs utilizing lies, shifting entities and deceit.  The Plaintiff's worked and put out efforts to bring Li the information he needed with respect to printing shops even going as far as to take him and his agents/employees on a personal tour of what the shops were like.  For all their efforts and work the Plaintiffs have yet to receive a "single solitary dime" from the Defendants.  In addition to the motive and opportunity evidenced there is only one glaring inference that can be made based upon the factual allegations in the complaint setting out the conduct of the plaintiffs and defendants.  Why would two Americans run around gathering information and giving tours to a man from China they had never previously met for no pay. He wasn't their friend, he wasn't their relative, the answer and the inference is clear from the complaint, they did it because they were obviously told they would get compensated but it didn't happen because it was all a lie by the defendant. It was Defendant Li's design of deceit, it was fraud and misrepresentation, using misleading business cards, shifting companies, lies, employees beholden to him, and the safety of being able to hide an ocean away from the United States legal system effectively leaving the plaintiffs damaged and uncompensated for their work.

**IV.  Li - Unjust Enrichment**

The Plaintiffs have sufficiently pled that the Defendants have benefited as a result of the franchise purchase, failed to unjustly pay the plaintiffs and the failure to pay was to the Plaintiffs detriment. Li clearly benefited from the work of the plaintiffs as a result of the franchise agreement.    The Plaintiff's make this claim in the alternative to their cause of action for a breach of contract against other defendants. Case law has conclusively shown that such alternate pleading is well established. "[A]

13

plaintiff is allowed to advance alternative and even inconsistent theories of liability against one or more defendants in a single complaint." DeVita v. Esposito, 13 Conn.App. 101, 105, 535 A.2d 364 (1987); Dreier v. Upjohn Co., 196 Conn. 242, 245, 492 A.2d 164 (1985). "Absent ... a showing of prejudice, there is no general prohibition of inconsistent pleadings." Hanover Ins. Co. v. Fireman's Fund Ins. Co, 217 Conn. 340, 346, 586 A.2d 567 (1991). However, a good faith limitation exists; a pleader may only plead in the alternative when he "does not know all the facts necessary to make an election." DeVita v. Esposito, supra, 105. "[I]t would be an abuse ... for a plaintiff to make an assertion in a complaint that he does not reasonably believe to be the truth." Dreier v. Upjohn, supra, 246. In light of Defendant Li's refusal to return to the United states to be deposed and testify under oath an alternative pleading in the matter at hand is sufficiently warranted. Consequently, the Defendant's argument that a claim of a contract in this case precludes the unjust enrichment claim must fail.

The Plaintiff's have sufficiently pled allegations of fact to support a cause of action against Li Quin Fu for unjust enrichment.   "[P]roof of a contract ordinarily precludes the remedy of unjust enrichment." Pleines v. Franklin Construction Co., 30 Conn.App. 612, 616, 621 A.2d 759 (1993). "The right to recovery for unjust enrichment is equitable, 'its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff.' (Citations omitted.)" Polverari v. Peatt, 29 Conn.App. 191, 200, 614 A.2d 484 (1992). "In order for [a plaintiff] to recover under the doctrine [of unjust enrichment], it must be shown that the defendants were benefited, that the benefit was unjust in that it was not paid for by the defendants, and that the failure of payment

14

operated to the detriment of [the plaintiff]." Menard v. Gentile, 7 Conn.App. 211, 215, 508 A.2d 456 (1986). See also, Polverari v. Peatt, supra, 201. In the absence of a breach of the contract by the defendant, a non-willful breach by the plaintiff, or a mutual rescission of the contract, proof of a contract enforceable at law precluded the equitable remedy of unjust enrichment. Polverari v. Peatt, supra, 199; Feng v. Dart Hill Realty, Inc., 26 Conn.App. 380, 383, 601 A.2d 547 (1992). The remedy of unjust enrichment is "broad and flexible" and requires examination of the "circumstances and the conduct of the parties." Meaney v. Connecticut Hospital Ass'n, 250 Conn. 500, 511, 735 A.2d 813, 820 (1999) (citations and internal quotation marks omitted): Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract ... A right of recovery under the doctrine ... is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. See id. at 511, 725 A.2d at 820 (citation and internal quotation marks omitted).

The Plaintiff's have alleged that Shanghai Matsuoka / Matsuoka America were used as a shell companies in dealing with the plaintiffs and the true enrichment of the deal with the plaintiffs as well as Sir Speedy was always defendant Li. The companies were interchangeable with Li as evidenced by the business card of Vicky Zhang produced at her deposition which displays Matsuoka America Co., LTD and Shanghai Matsuoka Co., LTD as mirror images of one another with offices in Shanghai and 350 Fifth Avenue., Suite 1520, New York, New York, 10118. (See attached Exhibit 4).  At trial Sir Speedy will be called to testify as to the dollar value of the agreement with Li's

Shell company Shanghai Matsuoka Co., LTD. A financial enrichment that was heaped

and flowed to Li as a result of the plaintiffs work and efforts.

## V. CONCLUSION

For the reasons stated above, the Motion to Dismiss should be denied.

FOR THE PLAINTIFFS

BY _____

Edward N. Lerner
Lerner & Guarino, LLC
112 Prospect Street
Stamford, CT 06901
(203) 416-8122
Bar No. ct07355

as follows.

EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - -x
:
MARIO TETA, JR. AND RONALD MACHADO :
:
Plaintiffs, :           CIVIL CASE NO.
:           302 CV 2183 (JBH)
:
VS. :
:
LI QUIN FU, SHANGHAI MATSUOKA :
COMPANY, LTD, LONG YI WANG, AMANDA :
Z. MAW, JERRY WANG, VICKI ZHANG AND :
MATSUOKA AMERICA LIMITED, :
:
Defendants. :
:           APRIL 23, 2003
- - - - - - - - - - - - - - - - - - - - - - - - - :x


### AFFIDAVIT OF VICKI ZHANG

STATE OF NEW YORK     )
                      )     ss. New York
COUNTY OF NEW YORK    )


Vicki Zhang, being duly sworn, deposes and says:

1.      I am over the age of eighteen years, and I believe in the obligation of an oath.

2.      I am employed by Matsuoka America Limited ("Matsuoka America"), a Chinese corporation registered to conduct business in New York.

3.      Shanghai Matsuoka is a Chinese corporation and its principal place of business is in Shanghai, China. It does not have any offices in New York or Connecticut.

4.      Neither Long Yi Wang nor Li Quin Fu worked at Suite 1520, 350 Fifth Avenue, New York, New York as of December 20, 2002 or since that time. Li Quin Fu

- 1 -

has never worked at this office location. Li Quin Fu's principal place of business in Shanghai, China.

_____
Vicki Zhang

Sworn to before me this 23rd day of April, 2003

_____
Commissioner of Superior Court
Notary Public

**CHARLES PEI WANG**
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01WA4745664
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES APR. 30, 2004

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was served by facsimile and United States first class mail, postage prepaid this 24th day of April, 2003 to all counsel of record as follows:

> George Kent Guarino, Esq.
> Lerner & Guarino, LLC
> 112 Prospect Street
> Stamford, CT 06901

By _Matthew C. Mason_
 Matthew C. Mason (ct 15291)
 Gregory and Adams, P.C.

MCM/djl
O:\CLIENTS\WANG\Affidavit of Vicki Zhang in support of motion to dismiss.doc

- 3 -

EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
MARIO TETA, JR. AND RONALD MACHADO   :
                                                    :
                    Plaintiffs,                     :        CIVIL CASE NO.
                                                    :        302 CV 2183 (JBH)
                                                    :
        VS.                                         :
                                                    :
LI QUIN FU, SHANGHAI MATSUOKA        :
COMPANY, LTD, LONG YI WANG, AMANDA  :
Z. MAW, JERRY WANG, VICKI ZHANG AND :
 MATSUOKA AMERICA LIMITED,           :
                                                    :
                    Defendants.                     :
                                                    :        APRIL 23, 2003
- - - - - - - - - - - - - - - - - - - - - - - - - - :x

### AFFIDAVIT OF JERRY WANG

STATE OF NEW YORK      )
                       )      ss. New York
COUNTY OF NEW YORK    )

Jerry Wang, being duly sworn, deposes and says:

1.      I am over the age of eighteen years, and I believe in the obligation of an oath.

2.      I am the President of Bridge Trading Company with a place of business at

350 Fifth Avenue, Suite 1520, New York, New York.

3.      On December 20, 2002, I returned to my office after lunch and a man was

leaving the office who had left a stack of papers on the conference room table in the

office exterior.  At no time did this man identify himself to me or explain why he was

~~leaving the papers. I did not sign for the papers since I did not know what they were or~~

who they were for, and he did not explain the situation to me.  He did not ask me any

questions except if I would sign for the papers.

- 1 -

4.    I am not authorized to accept legal process on behalf of Li Quin Fu, Long Yi Wang, Shanghai Matsuoka Company, Ltd., or Matsuoka America Ltd.

5.    Neither Long Yi Wang nor Li Quin Fu worked at Suite 1520, 350 Fifth Avenue, New York, New York as of December 20, 2003 or, to the best of my knowledge, since that time.  To the best of my knowledge, Li Quin Fu has never worked at this office.

6.    I never met or spoke to or had any dealings with either of the plaintiffs, Mario Teta, Jr. or Ronald Machado, prior to July 2002.  My sole contact with them was on one occasion in July 2002 when they came to the offices to speak to Vicky Zhang. She was not there so I told them I would tell her to get in touch with them.


_____
Jerry Wang


Sworn to before me this 23 day of April, 2003

_____
Notary Public

CHARLES PEI WANG
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01WA4745664
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES APR. 30, 2004

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was served by facsimile and United States first class mail, postage prepaid this 24th day of April, 2003 to all counsel of record as follows:

George Kent Guarino, Esq.
Ed Lerner, Esq.
Lerner & Guarino, LLC
112 Prospect Street
Stamford, CT 06901

By _____
Matthew C. Mason (ct 15291)
Gregory and Adams, P.C.

MCM/djl
O:\CLIENTS\WANG\Affidavit of Jerry Wang in support of motion to dismiss.doc

- 3 -

EXHIBIT 3

# SHANGHAI MATSUOKA CO., LTD.

## Qinfu Li
### CHAIRMAN & CEO

**SHANGHAI HEAD OFFICE**
1266, 63F-66F, 66 PLAZA ,NANJING ROAD WEST, SHANGHAI CHINA
TEL: 0086-21-62883080  FAX: 0086-21-62883886  ZIP: 200040
**BEIJING OFFICE**
4B INTERNATIONAL FINANCE BUILDING,156 FUXING DOOR BIG STREET, BEIJING, CHINA
TEL: 0086-10-66426288  FAX:0086-10-66426289  ZIP: 100031
**AMERICAN BRANCH**
Empire State Building, 350 Fifth Avenue, Suite 1520, New York NY 10118
. TEL: +1(212)736 3188  FAX:+1(212)594 1633
E-mail:lqf0308@21cn.com  Web: http://www.matsuoka.com.cn



EXHIBIT 4



# MATSUOKA AMERICA CO., LTD.
# SHANGHAI MATSUOKA CO., LTD.

**Vicky W. Zhang**

**NEW YORK OFFICE:**
350 Fifth Ave., Suite 1520
New York, NY 10118
Tel.: (212) 736-3168 ext 11
Fax:(212) 736-6090 540-1633
http://www.matsuoka.com.cn

**SHANGHAI HEAD OFFICE:**
8/F OOCL Building, 841 Yan An
Road Central, Shanghai, China
Zip: 200040
Tel.: 86 (021) 62893080
Fax: 86 (021) 62893088